JOHN WIMBERLY v. THE STATE.

No. 7284.    Decided April 18, 1923.

1.—Manufacturing Intoxicating Liquor—Hearsay Evidence.

The statement of the officer as to whose land the still was on when found would necessarily, under the facts in the instant case, be hearsay and inadmissible.

2.—Same—Insufficiency of the Evidence.

Where, upon trial of unlawfully manufacturing intoxicating liquor, the evidence was insufficient to support the conviction, the judgment must be reversed and the cause remanded.

3.—Same—Continuance—Want of Diligence.

Where the application for continuance showed a want of diligence, the same was properly overruled.

4.—Same—Cross-Examination—Practice in Trial Court.

While this court fully appreciates the value of the right of cross-examination into the antecedents of a witness, still a reasonable limit must be set, and that fixed by the trial court was not an abuse of his discretion.

5.—Same—Indictment—Duplicity—Rule Stated.

An indictment charging kindred offense in separate counts is not duplicitous, and the motion to quash was correctly overruled.

6.—Same—Motive of Witnesses—Evidence.

Where it appeared from the record that the defendant sought to show that the State's witness was guilty of an attack upon and improper conduct with his niece on the night before the fight took place, and this conduct caused the relations of said niece to administer to him a beating, he should have been permitted to show the motive of the witness.

7—Same—Surprise of Defendant—Witness Under Rule.

Where defendant placed on the stand a witness to show that the bottle of whisky was in fact hidden, etc.; that the State's witnesses' testimony with reference thereto came as a surprise, etc., invoking the rule that said witness had not been under, the rule should have been relaxed.

Appeal from the District Court of Llano. Tried below before the Hon. J. H. McLean.

Appeal from a conviction of unlawfully manufacturing liquor; penalty, one year imprisonment in the penitentiary.

The indictment, first count, alleged that defendant on or about the 20th of January 1922, manufactured spiritous and vinous and malt liquors capable of producing intoxication; and in the second count that he did then and there on the 29th of February, possess such liquor for the purpose of sale, against, etc. The jury found him guilty in the first count. The jury being instructed to say on which count they found defendant guilty.

The opinion states the case.

*T. H. McGregor* and *A. L. Love* for appellant.—On question of insufficiency of the indictment, Banks v. State, 246 S. W. Rep., 377, Golden v. State, 160 id., 957; Hickman v. State, 141 id., 973; Hawthorne v. State, 136 id., 776; Johnson v. State, 107 id., 53.

*W. A. Keeling*, Attorney General, and *C. L. Stone*, Assistant Attorney General, for the State.—On question of sufficiency of the indictment Rucker v. State, 7 Texas Crim. App., 549; Rummage v. State, 55 S. W. Rep., 64; Scott v. State, 81 id., 950.

LATTIMORE, JUDGE.—Appellant was convicted in the District Court of Llano County of manufacturing intoxicating liquor, and his punishment fixed at one year in the penitentiary.

From the testimony of one B. M. Mays we learn that a still was in operation on the premises of Dick Wimberley. Appellant lived on an adjoining farm. Mays testified that he first saw this still on Thursday February 17, 1922, on which occasion he went to where same was with Dick Wimberley to get some chops for the latter's hogs. No one seems to have been at the still on this visit. Mays

testified that he went back there the Saturday morning following and Willie Wimberley was there "with the can cooking whisky." Witness stayed thirty or forty minutes and says that while he was there appellant came from a near-by field in which he was plowing; that appellant sat down and took a drink of whisky and went back to his plow. Willie Wimberley was sitting over by a tub with a half gallon measure and "the stuff" was running into it. Witness testified that while there appellant said "it was good whisky we are making." On cross-examination Mays admitted that he had testified in cases already tried against Willie and Dick Wimberley and that he did not recollect that in either trial he had attributed to John Wimberley the statement just mentioned. He also admitted that in each of said cases he swore that while he was at the still appellant came down and just sat around and was not doing anything and went on back to his plowing.

On Tuesday morning following the visit to the still just described, this witness admitted that appellant and Willie Wimberley beat him up pretty badly, John Mays, a brother of witness, being present, and that at once after the fight witness went and phoned the officers at Llano, twelve miles distant, who came out in about an hour. Search by the officers revealed on Dick Wimberley's place several barrels partly filled with mash, some jugs, cans, funnels, several sacks of corn chops and a furnace made of bricks and rocks, with a stove-pipe, and having over the furnace a piece of iron with a hole in it. Others of the party who went with the officers found what they called a still, in a sack in a thicket, tree limbs having been thrown over it. This was found by means of information given by John Mays. No witness attempts to locate the place where this still was found except Mr. Johnson, the sheriff,—his testimony plainly showing it to be hearsay in this regard. He swore that when he got back to his car after finding the furnace, etc., on Dick Wimberley's place, Fred Jackson had already found the still and brought it to the car. He does not claim that anyone pointed out to him the place where the still was found. It follows that the statement of the sheriff as to whose land the still was on when found, would necessarily be hearsay. Fred Jackson was not asked on whose place he found the still.

We thus have the case against this appellant for manufacturing intoxicating liquor resting solely on the proximity of his farm to the one occupied by his brother Dick Wimberley, on whose farm there was a liquor factory, and the testimony of B. M. Mays that appellant came to where said still was in operation, sat down, took a drink, said that was good whisky we are making, got up and went back to his plowing. This statement attributed to appellant by Mays is so ambiguous as it appears in this record, that it is impossible to tell whether said witness intended to say that appellant said that witness and Willie Wimberley were making good whisky, or that it was good

whisky appellant and witness were making, or that it was good whisky appellant and Willie Wimberley were making. We can not afford to be careless about a matter on which depends a felony conviction of a citizen of this State. Aside from this statement just referred to, the record is devoid of legal testimony sufficient to support a conviction. If the testimony of Mr. Johnson be accepted,—which is not according to law,—the can in which whisky had been cooked, or the worm through which it had run (we are not informed what the witness meant when he used the word "still"), was found in a sack under some tree limbs in a thicket on appellant's place. A day or two before such finding it was in operation on the place of Dick Wimberley. Evidently it was not operated on appellant's land, and if found on his land as appears in the hearsay statement of the sheriff, it was put there by some one for hiding. By whom we are not informed. No liquor was found on appellant's farm, no mash, no signs or evidence of liquor manufacturing except the still found in the sack. No one bought any liquor from him. He tried to sell none. No one saw him bring wood, water, chops or anything used in liquor manufacture. B. M. Mays alone testified that appellant came from where he was plowing to the point on Dick Wimberley's farm where Willie Wimberley was making whisky. If coming there made him guilty, it would also make State witness Mays guilty,—for he went there by himself. If sitting down made appellant guilty, it also made Mays guilty, and likewise the taking of a drink of the whisky. The only thing in the testimony of Mays possessing evidential value bearing on appellant's guilt is the statement which we discussed above. The ambiguity of the language and the fact further evidenced by the record that this witness had gone over this same occurrence in two other trials, given two recitals of this transaction and now admits that he can not recollect whether he had mentioned this statement before, causes us to have a great hesitation in accepting the testimony as sufficient to support the verdict. B. M. Mays was of kin to the Wimberleys, had enjoyed their hospitality, drank their whisky until for a reason not disclosed John and Willie Wimberley beat him up, and then he reports them and gives testimony upon which apparently John, Dick, Ike, Willie and Andrew Wimberley, four nephews and a brother-in-law of Mays, were indicted.

Whisky manufacture is an evil and a grave one, and a violation of the law. So many of the good men of this State have for years been striving to rid the country of the curse of intoxicating liquor that it seems difficult to as calmly weigh the evidence in a case of this character as would be done in other felony cases. We must do so.

We do not think the application for continuance by appellant showed diligence. It is not shown that a subpoena had been issued in this case for the witness Iva Wimberley; nor had process been issued promptly for any of the other absent witnesses.

Appellant was allowed to cross-examine B. M. Mays as to his

recent movements, but the State's objection to extended cross-examination as to where he had lived, etc., was sustained. The bill of exceptions does not show that appellant expected to obtain facts by further examination along this line showing that witness had engaged in any occupation or had lived at any place either of which indicated moral turpitude, or that he was by reason thereof unworthy of credit. While we fully appreciate the value of the right of cross-examination into the antecedents of a witness, still a reasonable limit must be set, and we do not think that fixed by the learned trial court in the instant case any abuse of his discretion.

An indictment charging kindred offenses in separate counts, is not duplicitous.

State witness Mays admitted that just before he phoned for the officers, appellant and Willie Wimberley had beaten him up. He denied that this fight and the beating he got actuated him in reporting appellant or influenced him while a witness. He attempted no explanation of said fight or its cause or why same occurred. Appellant sought to show that said witness was guilty of an attack upon and improper conduct with his niece Ruby Mays on the night before the fight took place, and that his said conduct caused the Wimberleys, who were also related to said girl, to administer to him said beating. We are not prepared to say that the motives of B. M. Mays might not have been thus explored. Mr. Branch cites many cases in Sec. 163 of his Annotated P. C. upon the proposition that the motives of a witness are never to be regarded as merely collateral, and that any testimony which sheds light on the animus or prejudice of a State witness toward the accused, is admissible.

Evidence of the finding of a bottle of whisky on the premises of Dick Wimberley out in front of his house, after the arrest of appellant, was admitted on behalf of the State. The wife of B. M. Mays testified that she was with Pauline Wimberley when the latter took said bottle and hid it where the officers found it. Appellant offered as a witness Pauline Wimberley to show that the bottle of whisky was in fact hidden at said place by Alice Mays, who got it out of the car of B. M. Mays. The State objected to this testimony on the ground that the rule had been invoked and that Pauline Wimberley had been in the court room during the trial. Appellant's counsel then stated that the testimony of Mrs. Alice Mays came as a surprise and that they were not aware that she would so testify. Nothing is presented showing bad faith in this statment on the part of appellant's counsel and we think the testimony should have been admitted.

For the errors above mentioned, the judgment will be reversed and the cause remanded.

*Reversed and remanded.*